IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

| | |
|---|---|
| JONATHAN CRAIG HAWKINS and<br>TIMOTHY BRIAN SHEPHARD, JR.,<br><br>   Plaintiff,<br><br>v.<br><br>HOPKINSVILLE SOLID WASTE ENTERPRISE,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No.   5:23CV-83-BJB<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

Come Plaintiffs Jonathan Craig Hawkins and Timothy Brian Shephard, Jr., by and through counsel, and, for their Complaint against Defendant Hopkinsville Solid Waste Enterprise, state as follows:

### I. Introduction to the Action

1. Defendant operates a municipal waste system, including servicing dumpsters at commercial facilities in Hopkinsville, Kentucky. Plaintiffs[1] were employed by Defendant as truck drivers, then promoted to the position of "Supervisor". However, Plaintiffs' job duties remained largely the same after the promotion and did not include a primary duty of management of Defendant's enterprise. Nevertheless, with the promotion, Defendant misclassified Plaintiffs as exempt under the Fair Labor Standards Act ("FLSA") and Kentucky Wages and Hours Act ("KWHA"), changed Plaintiffs' pay from an hourly basis (with hours worked being recorded by a timeclock) to a salary basis (with Defendant doing nothing to record the number of hours worked

---

[1] The term "Plaintiffs" herein refers to both Plaintiff Hawkins and Plaintiff Shephard, but also includes any person who hereafter joins this action pursuant to 29 U.S.C. § 216(b).

by Plaintiffs), and improperly ceased paying overtime compensation to Plaintiffs. As a result, Plaintiffs worked overtime in numerous work weeks following their promotions but were not paid any compensation for that overtime work, in violation of the FLSA and KWHA.

Further, to obscure Defendant's violations of the FLSA with respect to Plaintiffs' "Supervisor" work, Defendant awarded compensation to Plaintiffs after the promotion in the form of a benefit which Defendant referred to as "Comp Time" (hours of paid time off); however, while the FLSA permits certain employers to pay "compensatory time" off as an alternative to overtime compensation, Defendant's awarding of "Comp Time" did not comply with the FLSA, including because the Defendant's "Comp Time" benefit (A) was not in proportion to the number of overtime hours worked as required by 29 U.S.C. § 207(o)(1), and (B) was accrued far in excess of the maximum hours cap the FLSA imposes upon compensatory time off in 29 U.S.C. § 207(o)(3)(A).

Finally, Defendant violated the law in two separate additional ways with respect to this "Comp Time." With respect to Plaintiff Hawkins, Defendant, in retaliation for Plaintiff's reports about Defendant's management embezzling Defendant's funds (and in violation of the Kentucky Whistleblower Act), encouraged Plaintiff Hawkins to use the "Comp Time" benefit after Plaintiff's home was destroyed (with Plaintiff in it) in the December, 2021 tornado, while simultaneously taking advantage of Plaintiff Hawkins' resulting absence to disparage, demote and constructively terminate him. With respect to Plaintiff Shephard, Defendant failed to pay the accrued "Comp Time" benefit upon Plaintiff Shephard ceasing to be employed by Defendant, which was a breach of contract and the Kentucky Wages and Hours Act and violated 29 U.S.C. § 207(o)(4) (even if the "Comp Time" benefit otherwise complied with the FLSA, which it did not).

## II.     Jurisdiction and Venue

2. This Court has jurisdiction under 28 U.S.C. § 1331 as Plaintiffs' claims arise under federal law, including 29 U.S.C. § 216(b).

3. This Court has and should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' claims under the Kentucky Wages and Hours Act ("KWHA"), under the Kentucky Whistleblower's Act, and for breach of contract as they are related to Plaintiff's claims under the FLSA; they form part of the same case or controversy and arise from the same set of operative facts as Plaintiffs' claims under the FLSA.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) as Defendant operates a municipal waste system Christian County, Kentucky within the District of this Court and Plaintiff worked for Defendant in Christian County, Kentucky within the District of this Court.

## III.     Parties

5. Both Plaintiffs performed overtime work (work in excess of forty hours in a workweek) for Defendant, and were not paid overtime compensation for that work, during many workweeks in the last three years.

6. Plaintiffs' consents to join this action pursuant to 29 U.S.C. § 216(b) are attached hereto as Exhibits 1 and 2.

7. Throughout each Plaintiff's employment with Defendant, each Plaintiff resided and worked for Defendant in the Commonwealth of Kentucky and his work was governed by the FLSA.

8. During all times relevant, Defendant was an employer governed by the FLSA; it was an enterprise covered by the FLSA, including as an "enterprise" and "enterprise engaged in commerce or in the production of goods for commerce" under 29 U.S.C. § 203.

9. Upon information and belief, Defendant may be served by service of process on its General Manager, Richard Hopper, at 5665 Mt. Zoar/Latham Road, Hopkinsville, KY 42240.

### IV. Facts

10. Throughout their employment, Plaintiffs worked a position that was non-exempt under the FLSA.

11. Specifically, Plaintiffs each worked for periods of time in the position of "Commercial Equipment Operator III", which was essentially a truck driver position in which Plaintiffs would pick up and deliver large dumpster "boxes" of waste from industrial and commercial customers of Defendant.

12. Plaintiffs each were promoted at some point the position of "Supervisor."

13. Specifically, Plaintiff Hawkins worked in the position of Supervisor from approximately March of 2018 until after he began using the "Comp Time" benefit following the December, 2021 tornado (discussed in more detail below), and Plaintiff Shephard was promoted into the position of Supervisor in 2022, and worked in this position from the promotion until he stopped working for Defendant in 2023.

14. During the period of time that Plaintiffs were employed as Supervisor by Defendant, Defendant did not pay Plaintiffs overtime compensation.

15. Instead, Defendant classified Plaintiffs as exempt (not entitled to overtime compensation) under the FLSA and KWHA during the period of time Plaintiffs worked as a Supervisor.

16. This classification was incorrect; Plaintiffs were not subject to any exemption under either the FLSA or KWHA (to the extent Defendant denies this allegation and asserts that any exemption to the FLSA or KWHA applied, Plaintiffs note that under both the FLSA and KWHA

an employer (and not the employee) bears the burdens of pleading, proof and persuasion relating to the applicability of any exemption, and Plaintiffs do not, by referencing Defendant's misclassification here, waive their right to require the employer to bear those burdens)

17. Without limiting the intended generality of the previous paragraph, any classification by Defendant of Plaintiffs' work in the position of Supervisor as exempt was incorrect, as Plaintiffs' primary duty was not managing Defendant's enterprise or managing a customarily recognized department or subdivision of the enterprise.

18. Instead, as before the promotion to Supervisor, the primary duty of Plaintiffs as supervisor after the promotion was the actual hauling of garbage and garbage containers.

19. In fact, at some point after Plaintiff Hawkins stopped working as Supervisor, Defendant requested Plaintiff Shephard to serve as an "acting" Supervisor for a twelve-week period.

20. Mr. Shephard had previously been Supervisor in 2017-2018, before Mr. Hawkins had become Supervisor.

21. Mr. Shephard's work duties during the twelve-week "Acting Supervisor" period were consistent with the work duties Mr. Shephard had in his 2017-2018 stint as Supervisor, consistent with Mr. Hawkins' work duties as Supervisor from March of 2018 until the December 2021 tornado, and were consistent with Mr. Shephard's duties during the later period when he was employed as Supervisor and not paid overtime at all.

22. However, during the twelve-week "Acting Supervisor" period, Defendant paid Plaintiff Shephard ten hours of overtime per week, in effect acknowledging that the position was non-exempt and involved at least that much overtime work.

23. Further, in Plaintiffs' capacity as Supervisor, Plaintiffs did not have the authority

to hire or fire other employees, and Plaintiffs' suggestions and recommendations as to hiring, firing, advancement, promotion or any other change of status of other employees were not given weight by Defendant, let alone substantial and/or particular weight.

24.  To the contrary, Defendant's upper management (including General Manager Anthony Sicari, Assistant General Manager (later promoted to General Manager) Richard Hopper, and Human Resources Director/Assistant Manager Jenny Delawson) made clear to Plaintiffs that only upper management had the authority to make these decisions, and that the decisions would be made without giving weight to Plaintiffs' suggestions and/or recommendations.

25.  For example, Ms. Delawson told Mr. Shephard in no uncertain terms that he had no role in participating in interviews of employees, and that he would not be permitted to participate in interviews, even though Defendant's policies contemplated that Supervisors would participate in interviews; therefore, Mr. Shephard never participated in any interviews until the last day of his employment.

26.  Defendant did not record the amount of Plaintiffs' time worked, using a timeclock or otherwise, during the period of time Plaintiffs were employed as "Supervisor."

27.  Plaintiffs each worked far more than forty hours per week in most workweeks during the period of time Plaintiffs worked as Supervisor.

28.  Defendant's upper management was aware during the time the work was being performed that Plaintiffs each worked more than forty hours per week in most workweeks during the period of time Plaintiffs worked as Supervisor.

29.  Based on its classification of Plaintiffs as exempt under the FLSA and KWHA, Defendant did not pay Plaintiffs overtime compensation for Plaintiffs' overtime work performed in the capacity of Supervisor.

30. Upon information and belief, after Plaintiff Shephard ceased being employed by Defendant in the year 2023, Defendant employed (and, at the time of filing this Complaint, still employs[2]) one or more employees in the "Supervisor" position previously held by Plaintiffs.

31. Upon information and belief, like it had done with respect to Plaintiffs, Defendants required and/or permitted such employee(s) to perform overtime work but did not pay such employee(s) overtime compensation for such overtime work due to Defendant's misclassification of such employee(s) as exempt.

32. Accordingly, notice should issue to such employee(s) in accordance with the United States Sixth Circuit Court of Appeal's recent ruling in *Clark v. A&L Homecare and Training Center, LLC,* ___ F.4th ___, 2023 WL 3559657 (6th Cir. May 19, 2023) (Court should order notice to be promptly issued to employees upon a showing by the plaintiff of "a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves").

33. Defendant promised a "Comp Time" benefit to Plaintiffs for their work during the period of time that Plaintiffs were employed as "Supervisor."

34. Specifically, Plaintiffs were told by Defendant that they would accrue forty hours of "Comp Time" per month during the period of time that Plaintiffs were employed as "Supervisor"; Defendant told Plaintiffs that these hours would continue to accrue and that each Plaintiff would be able to use such Plaintiff's hours to be paid such Plaintiff's full salary during periods of time when

---

[2] To be clear, to the extent any person joins this action pursuant to 29 U.S.C. § 216(b), and is employed by Defendant after the filing of this action (or if either Plaintiff Hawkins or Shephard again work during the pendency of this action for Defendant) in the position of "Supervisor", this Complaint seeks the unpaid overtime compensation accruing to such employee during the pendency of this action, plus liquidated damages and attorney's fees. Further, to the extent Defendant continue to violate the FLSA and KWHA with respect to the "Supervisor" position after the filing of this Complaint, such continuing violations will be further evidence of the mindset with which Defendant violated the FLSA and KWHA prior to the filing of this action.

such Plaintiff did not perform work, or be paid all of the "Comp Time" at the conclusion of such Plaintiff's employment with Defendant.

35. The FLSA permits certain employers to pay "compensatory time" off as an alternative to overtime compensation, see 29 U.S.C. § 207(o); however, Defendant's "Comp Time" benefit did not in any way meet the requirements of the FLSA to permit Defendant to avoid paying overtime compensation.

36. Specifically, Defendant's "Comp Time" benefit was not in proportion to the number of overtime hours worked as required by 29 U.S.C. § 207(o)(1)

37. Defendant knew that Plaintiffs were regularly working overtime hours that varied somewhat in each workweek, but usually exceeded ten or more overtime hours per week (fifty or more total hours of work per week).

38. Nevertheless, the benefit Defendants paid did not vary; Defendant promised Plaintiffs' entitlement to "Comp Time" accrued at the fixed rate of forty hours per month, without regard to the actual number of hours Plaintiffs worked as Supervisor (which, again, Defendant did nothing to track).

39. Further, because the FLSA requires true compensatory time off to be awarded at a rate of one and one-half hours per hour of overtime, the "Comp Time" benefit did not amount to the actual amount of hours Plaintiffs earned for their work as Supervisor

40. Specifically, because Plaintiffs generally worked ten or more hours of overtime per week, true compensatory time off under the FLSA would have accrued at a rate of fifteen or more hours per week, or about sixty-five or more hours per month, which is far more than the forty-hour-per-month accrual Defendant actually provided.

41. Further, true compensatory time off under the FLSA can only be utilized by a qualifying employer as an alternative to paying overtime compensation with certain caps of the number of hours of compensatory time that may be accrued.

42. Specifically, if Defendant had provided true compensatory time off to Plaintiffs in lieu of overtime compensation for Plaintiff's work as Supervisor, Defendant could only do so for each Plaintiff during time periods when such Plaintiff had accrued less than 240 hours of compensatory time off.  *See* 29 U.S.C. § 207(o)(3)(A).

43. 29 U.S.C. § 207(o)(3)(A) permits a higher 480-hour accrual cap for true compensatory time for "work in a public safety activity, an emergency response activity, or a seasonal activity."

44. However, the work of the Plaintiffs in the position of Supervisor for Defendant was not any such work.

45. Instead, the work of the Plaintiffs in the position of Supervisor for Defendant was "any other work" that could only be subject to payment of true compensatory time off in lieu of overtime to the extent of the lower 240-hour cap of 29 U.S.C. § 207(o)(3)(A).

46. Indeed, Plaintiffs' overall work was instead to pick up and take away garbage on a regular basis, and not a part of any public safety, emergency response, or seasonal activity.

47. In any event, Defendant did not, as the FLSA requires, begin paying Plaintiffs overtime compensation upon Plaintiffs hitting either cap imposed by 29 U.S.C. § 207(o)(3)(A)

48. Instead, Defendant continued to accrue "Comp Time" benefit for Plaintiffs indefinitely and well in excess of the 29 U.S.C. § 207(o)(3)(A) cap.

49. For example, attached hereto as Exhibit 3 is a sheet Defendant prepared showing the amount of time employees had accrued in various forms of benefits.

50. On Exhibit 3, the column entitled "Total" is not in fact a total of all (or any combination of) the other columns, but is instead the amount of unused "Comp Time" hours the applicable employee had accrued as of the time the document was prepared.

51. Exhibit 3 reflects that Plaintiff Hawkins had 1,608.75 hours as of January 2, 2022.

52. Upon information and belief, Defendant knew that it was not complying with the FLSA in not paying Plaintiffs overtime pay for their overtime work as Supervisor, and further knew that its "Comp Time" benefit also did not comply with the FLSA, but nevertheless used the name "Comp Time" for the benefit it promised Plaintiffs in order to cast an illusion of FLSA-compliance over Defendant's pay structure.

53. In addition, Defendant took action with respect to its "Comp Time" benefit that were unlawful in two other regards.

54. First, Defendant utilized the "Comp Time" benefit to retaliate against Plaintiff Hawkins in violation of the Kentucky Whistleblower's Act for Plaintiff's protected reports to appropriate authorities that Defendant's then-General Manager, Anthony Sicari, was embezzling Defendant's funds.

55. The nature of the embezzlement scheme was that Mr. Sicari would have a particular vendor bill amounts to Defendant for services allegedly performed by the vendor despite Mr. Sicari knowing that the amounts the vendor billed were excessive and were not actually rightfully owed to the vendor by Defendant; for instance, the services provided by the vendor were alleged repair services, but the items being allegedly repaired could have been easily repaired (or even replaced with entirely new items, which would have been of better quality than the used items, even if actually repaired appropriately, which they were often not) at a substantially lower cost to Defendant than the intentionally-inflated amounts being billed to Defendant by the vendor.

56. Despite being aware that the amounts being billed were excessive (in some cases, Mr. Sicari even insisted that even higher amounts be billed to the Defendant than the vendor-conspirator initially proposed), Mr. Sicari would ensure Defendant paid the vendor the excessive amounts; in exchange, the vendor would pay amounts to Mr. Sicari, personally.

57. This was not a minor scheme; upon information and belief, Defendant paid over $1.5 million to the vendor-conspirator over a course of years; upon information and belief, a substantial portion of these payments were embezzled by Mr. Sicari (paid by the vendor-conspirator as fraudulent kickbacks to Mr. Sicari, personally).

58. Defendant's current General Manager, Richard Hopper, was Assistant General Manager under Mr. Sicari during the period of time that this scheme was ongoing while Plaintiffs were employed as Supervisor and, upon information and belief, was aware of the embezzlement.

59. Mr. Hopper instructed Plaintiff Hawkins, when Plaintiff Hawkins first gained access to budget documents at Defendant, to never question Mr. Sicari about certain budget items that included the excessive payments to the vendor.

60. On another occasion, during Plaintiff's employment, Mr. Hopper "joked" with Plaintiff Hawkins by asking Plaintiff Hawkins how much of a "cut" Mr. Hawkins got from Mr. Sicari's embezzlement scheme with the vendor; Plaintiff Hawkins did not participate in the embezzlement scheme and told Mr. Hopper that Plaintiff Hawkins did not participate (and that the embezzlement scheme had been going on long before Mr. Hawkins began working for Defendant which, upon information and belief, was and is true).

61. However, during Plaintiff's employment, despite Mr. Hopper's acts described above, Plaintiff did not know the extent (if any) of Mr. Hopper's involvement in the embezzlement scheme, and believed Mr. Hopper would be an appropriate authority to address concerns regarding

the ongoing nature of the embezzlement scheme; for instance, on one occasion Mr. Hopper told Mr. Hawkins that Mr. Hopper had, in order to circumvent Mr. Sicari, reported to Defendant's attorney and to a member of Defendant's board Mr. Hopper's concerns regarding Defendant making excessive payments to the vendor-conspirator.

62. On multiple occasions, Plaintiff Hawkins reported the ongoing nature of the embezzlement scheme to appropriate authorities.

63. For example, when Defendant announced it intended to lay off certain employees because of budgetary issues, Mr. Hawkins asked Mr. Sicari, in the presence of Mr. Hopper, to not lay off the employees, pointing to the upcoming Christmas holidays; when Mr. Sicari, in response, complained about the budget, and asked Mr. Hawkins to explain how Defendant could avoid having to layoff the employees, Plaintiff Hawkins told Mr. Sicari, in the presence of Mr. Hopper, that Defendant should stop paying money to the vendor-conspirator.  Upon information and belief, all present understood Mr. Hawkins to be reporting the ongoing nature of the embezzlement scheme.

64. In addition, during a meeting attended by all of Defendant's management and supervisors, Mr. Sicari complained to Mr. Hawkins about Defendant's budget, to which Mr. Hawkins replied to all present that Defendant should look at specific budget item lines, which Mr. Hawkins identified by line number (these were the lines Mr. Hopper had previously told Mr. Hawkins to never question and which included the excessive payments to the vendors); Mr. Hopper was present, was aware Plaintiff was reporting Mr. Sicari's embezzlement scheme (and Mr. Hawkins's awareness thereof) to all present, and visibly reacted by tensing his body; Mr. Sicari also acknowledged his understanding of the import of Plaintiff's actions by immediately changing the subject entirely.

65. After and based on Plaintiff's reports to appropriate authorities of Mr. Sicari's embezzlement scheme and its ongoing nature, Defendant decided to retaliate against Plaintiff Hawkins, seizing on the happenstance that Plaintiff Hawkins' home was destroyed (with Plaintiff Hawkins and his wife in it) in the December, 2021 tornado in Western Kentucky.

66. Specifically, Mr. Sicari directed Mr. Hawkins to take time to emotionally recover from the near-death experience in the tornado and rebuild his home by utilizing all of Plaintiff's many accrued hours of "Comp Time" benefit; while Mr. Sicari stated that his concern was regarding Mr. Hawkins' ability to recover from the tornado, Mr. Sicari's actual goal was instead to retaliate against Mr. Hawkins for his earlier protected reports.

67. While Mr. Hawkins was using the "Comp Time" benefit as directed by Mr. Sicari, Mr. Sicari retaliated against Plaintiff Hawkins for his protected reports by falsely disparaging Mr. Hawkins to other employees (falsely telling them that Mr. Hawkins had not communicated with Mr. Sicari about Mr. Hawkins' use of the "Comp Time" benefit, when it had in fact been only at Mr. Sicari's insistence that Mr. Hawkins had continued to use that benefit beyond February, 2022), directing other employees not to talk to Mr. Hawkins, and demoting Mr. Hawkins from the Supervisor position back to Mr. Hawkins' original truck driver position.

68. Defendant did not tell Mr. Hawkins (and Mr. Hawkins was not otherwise aware) that Defendant had demoted Mr. Hawkins until October, 2023; when Mr. Hawkins realized he had been demoted and requested to be reinstated, Defendant refused to reinstate Mr. Hawkins, again in retaliation for Plaintiff's earlier reports regarding the embezzlement scheme.

69. Any reasonable employee in Plaintiff Hawkins's position (after having been demoted, alienated from his co-workers, and disparaged, for reporting embezzlement by the

management of his employer) would not continue to work for the offending employer; Defendant's actions towards Plaintiff constituted a constructive termination of Plaintiff Hawkins.

70. Second, Defendant also violated the law with respect to the "Comp Time" benefit in an additional, separate way.

71. Specifically, when Plaintiff Shephard ceased working for Defendant, Defendant refused to pay Plaintiff Shephard his accrued "Comp Time" benefit.

72. Even if Defendant's "Comp Time" benefit otherwise complied with the FLSA (which, for the many reasons stated above, it did not), Defendant's refusal to pay the accrued "Comp Time" benefit at the termination of Plaintiff Shephard's employment violated 29 U.S.C. § 207(o)(4), which requires "accrued compensatory time off" to be paid to an employee "upon termination of employment," without regard to the reason for the end of the employment.

73. Further, Defendant's refusal to pay Plaintiff Shephard his accrued time off was a breach of contract; Defendant promised to pay Plaintiff Shephard the benefit for his work, and had in fact paid several other employees (including Joey Dulin and Audrey Burse) their accrued "Comp Time" benefit at the conclusion of their work (and, upon information and belief, in fact was in the process of paying "Comp Time" to Mr. Sicari after the end of his employment, despite current management's awareness that Mr. Sicari had embezzled from Defendant), but refused to pay Plaintiff Shephard.

### COUNT I – ALL PLAINTIFFS

**Violation of the FLSA: Failure to Properly Pay Overtime Compensation
(On Behalf of All Plaintiffs)**

74. All previous paragraphs are incorporated as though fully set forth herein.

75. The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the

regular rate.  *See* 29 U.S.C. § 207(a)(1).

76. Defendant is subject to the wage requirements of the FLSA because Defendant is an employer under 29 U.S.C. § 203, including 203(d).

77. At all relevant times, Defendant was an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

78. During all relevant times, Plaintiffs were covered employees entitled to the above-described FLSA protections.  *See* 29 U.S.C. § 203(e).

79. During all relevant times, Plaintiffs were not exempt from the requirements of the FLSA.

80. Plaintiffs each worked more than forty (40) hours in one or more workweeks without full overtime compensation and are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

81. Defendant knowingly failed to properly compensate Plaintiffs by failing to pay Plaintiffs overtime compensation for Plaintiffs' overtime work.

82. In violating the FLSA, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

83. Pursuant to 29 U.S.C. § 216(b), employers, such as Defendant, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## COUNT II – ALL PLAINTIFFS

### VIOLATION OF KY. REV. STAT. ANN. §§ 337.275, *ET SEQ.* BY NONPAYMENT OF OVERTIME COMPENSATION

84. All previous paragraphs are incorporated as though fully set forth herein.

85. Plaintiff bring this claim on behalf of all members of the proposed Rule 23 Class.

86. Kentucky state law requires that covered employees be compensated for every hour worked in a workweek. *See* KY. REV. STAT. ANN. §§ 337.275, *et seq*.

87. KY. REV. STAT. ANN. § 337.285 requires that employees receive overtime compensation "not less than one and one-half (1-1/2) times" the employee's regular rate of pay for all hours worked over forty in one workweek. *See also* 803 Ky. Admin. Regs. 1:060.

88. During all times material to this complaint, Defendant was a covered employer required to comply with KY. REV. STAT. ANN. § 337.010(1)(d).

89. During all times material to this complaint Plaintiffs were covered employees entitled to the protections of the KWHA. *See* KY. REV. STAT. ANN. § 337.010(1)(e).

90. Defendant is not exempt from providing Plaintiffs the KWHA's overtime benefits because Plaintiffs do not fall within any of the exemptions set forth therein. *See* KY. REV. STAT. ANN. § 337.285(2).

91. Defendant has violated the KWHA with respect to Plaintiffs by, *inter alia*, failing to compensate them for all hours worked, including hours in excess of forty per workweek at one and one-half their "regular rate" of pay.

92. In violating the KWHA, Defendant acted willfully and with reckless disregard of clearly applicable provisions of the KWHA.

93. Pursuant to KY. REV. STAT. ANN. § 337.385, Defendant, because it failed to pay employees the required amount of wages and overtime at the statutory rate, should be found liable

to the employees not only for the unpaid wages, but also for liquidated damages in an amount equal to the amount of unpaid wages.

94. Pursuant to KY. REV. STAT. ANN. § 337.385, Plaintiff and Class Members are entitled to reimbursement of the litigation costs and attorney's fees expended if they are successful in prosecuting an action for unpaid wages.

## COUNT III – PLAINTIFF HAWKINS

## VIOLATION OF KENTUCKY WHISTLEBLOWER ACT

95. Defendant demoted and constructively terminated Plaintiff Hawkins

96. Plaintiff Hawkins reported actual and/or suspected violations of law (and facts relative to actual and/or suspected mismanagement, fraud, and abusive of authority) to an appropriate body or authority, including but not limited to Mr. Hawkins reporting the same to Mr. Hawkins's superior, Richard Hopper (during the period of time that Mr. Hopper was Assistant General Manager of Defendant), to Mr. Sicari (during the period of time Mr. Sicari was General Manager, with Mr. Hawkins demanding that Mr. Sicari cease continuing to engage in the violations of law, mismanagement, fraud, and abuse of authority), to all of Defendant's management, and to Mr. Hopper (during the period of time Mr. Hopper was General Manager of Defendant).

97. Defendant demoted and constructively terminated Plaintiff Hawkins in retaliation for Plaintiff's protected reports.

98. Defendant's retaliation against Plaintiff Hawkins caused Plaintiff damages, and Plaintiff should be reinstated and awarded all relief to which he is entitled, including but not limited to relief authorized under K.R.S. § 990(4), back wages, exemplary damages, punitive damages, and the costs of this action, including reasonable attorney fees and witness fees.

## COUNT IV – PLAINTIFF SHEPHARD

## BREACH OF CONTRACT

99. Defendant promised Plaintiff Shephard that he would accrue forty hours of Comp Time benefit per month and that Plaintiff Shephard would be paid at a rate of one-fortieth of his weekly salary for each of the Comp Time hours he accrued.

100. Defendant did not ever condition its promise to pay these amounts on Plaintiff continuing to be employed and on Plaintiff using the hours sporadically while continuing to be employed; to the contrary, several other employees of Defendant were paid all of their accrued Comp Time at the end of their employment.

101. Plaintiff worked for Defendant in reliance upon Defendant's promises to pay Plaintiff for Defendant's

102. Defendant breached its promise and contract with Plaintiff Shephard and refused to pay Plaintiff Shephard the amounts owed under the Comp Time benefit.

103. Defendant's breach of contract caused Plaintiff Shephard damages, and Plaintiff Shephard should be granted relief for that breach, including in the amount of Comp Time benefits he earned but was not paid.

## COUNT V – PLAINTIFF HAWKINS

## VIOLATION OF KENTUCKY WAGES AND HOURS ACT AS TO NONPAYMENT OF AMOUNT OWED FOR ACCRUED "COMP TIME" HOURS

104. Defendant's refusal to pay Plaintiff Shephard the accrued Comp Time benefit also constitutes nonpayment of wages in violation of the Kentucky Wages and Hours Act, and Plaintiff Shephard should be awarded under such Act the amount he should have been paid, plus liquidated damages, plus attorney's fees and expenses.

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief on behalf of himself and all other similarly situated:

a. The issuance of process, and the bringing of Defendant before the Court;

b. That this Court authorize notice to any similarly situated employee(s) pursuant to 29 U.S.C. § 216(b) and *Clark v. A&L Homecare and Training Center, LLC,* ___ F.4th ___, 2023 WL 3559657 (6th Cir. May 19, 2023), with such notice to inform such employee(s) of this action and of such employee(s) right to join this action pursuant to 29 U.S.C. § 216(b);

c. The empaneling of a jury to hear all issues of fact;

d. a judgment granting Plaintiffs all relief to which Plaintiffs are entitled for Defendant's nonpayment of overtime compensation under the Fair Labor Standards Act and Kentucky Wages and Hours Act, including unpaid wages, liquidated damages, and attorney's fees and other litigation expenses;

e. a judgment granting Plaintiff Hawkins all relief to which he is entitled for Defendant's violation of K.R.S. § 61.102, including but not limited to reinstatement, relief authorized under K.R.S. § 990(4), back wages, exemplary damages, punitive damages, and the costs of this action, including reasonable attorney fees and witness fees;

f. a judgment granting Plaintiff Shephard all relief to which he is entitled for Defendant's non-payment to Plaintiff Shephard of the amounts owed for the Comp Time benefit, including a judgment for damages, liquidated damages under the Kentucky Wages and Hours Act, and attorney's fees and other litigation expenses under the Kentucky Wages and Hours Act;

g. Such other and further relief to which Plaintiffs, or either of them, are entitled or which this Court otherwise deems just and proper.

Respectfully submitted,

/s/ Mark N. Foster
Mark N. Foster
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
MFoster@MarkNFoster.com
*Counsel for Plaintiffs*